## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

RICHARD NIELDS,

           Petitioner,

         -vs-

MARGARET BRADSHAW, Warden,

           Respondent.

:

:

:

:

Case No. 1-03-cv-019

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

---

### REPORT AND RECOMMENDATIONS ON CERTIFICATE OF APPEALABILITY

---

This capital habeas corpus case is before the Court on Petitioner's Request for a Certificate of Appealability (Doc. No. 28) which Respondent opposes (Doc. No. 30).

The Petition contains thirty grounds for relief, but the Court upon de novo consideration granted relief on none of them. Petitioner now seeks a certificate of appealability on Grounds for Relief One, Three, Four, Nine, Twenty-seven, Twenty-eight, Twenty-nine, and Thirty.

### Standard

A person in custody upon a state conviction seeking to appeal an adverse ruling on a petition for writ of habeas corpus in the district court must obtain a certificate of appealability before proceeding. 28 U.S.C. §2253 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), provides in pertinent part:

1

(c)

(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

    (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

    (B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

District courts have the power to issue certificates of appealability under the AEDPA in §2254 cases. *Lyons v. Ohio Adult Parole Authority*, 105 F. 3d 1063 (6th Cir. 1997); *Hunter v. United States*, 101 F. 3d 1565 (11th Cir. 1996)(en banc).  Likewise, district courts are to be the initial decisionmakers on certificates of appealability under §2255.  *Kincade v. Sparkman*, 117 F. 3d 949 (6th Cir. 1997)(adopting analysis in *Lozada v. United States*, 107 F. 3d 1011, 1017 (2d Cir. 1997).  Issuance of blanket grants or denials of certificates of appealability is error, particularly if done before the petitioner requests a certificate.  *Porterfield v. Bell,* 258 F. 3d 484(6th Cir. 2001); *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001).

To obtain a certificate of appealability, a petitioner must show at least that "jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000).  That is, it must find that reasonable jurists would find the district court's assessment of the petitioner's constitutional claims debatable or wrong.  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003).  If the district court dismisses the petition on procedural grounds without reaching the constitutional

questions, the petitioner must also show that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.  The procedural issue should be decided first so as to avoid unnecessary constitutional rulings.  *Slack*, 529 U.S. at 485, 120 S. Ct. at 1604, citing *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (1936)(Brandeis, J., concurring).  The first part of this test is equivalent to making a substantial showing of the denial of a constitutional right, including showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further, *Slack v. McDaniel*, 529 U.S. 473 at 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000), quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).  The relevant holding in *Slack* is as follows:

> [W]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

529 U.S. 473, 478,120 S. Ct. 1595,1600-1601

The standard is higher than the absence of frivolity required to permit an appeal to proceed *in forma pauperis*.  *Id.* at 893.

> Obviously the petitioner need not show that he should prevail on the merits... Rather, he must demonstrate that the issues are debatable among jurists of reason;  that a court could resolve the issues [in a different manner];  or that the questions are 'adequate to deserve encouragement to proceed further.'

*Id.* n.4.  *Accord, Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1039-1040, 154 L.Ed.2d 931 (2003).  A certificate of appealability is not to be issued pro forma or as a matter of course.  *Id.* at

3

1040.  Rather, the district and appellate courts must differentiate between those appeals deserving attention and those which plainly do not.  *Id*.  A blanket certificate of appealability for all claims is improper, even in a capital case.  *Frazier v. Huffman*, 348 F. 3d 174 (6th Cir. 2003), *citing Porterfield v. Bell,* 258 F. 3d 484 (6th Cir. 2001).


### Analysis

### First Ground for Relief

In his First Ground for Relief, Petitioner claims he was denied due process under the Fifth and Fourteenth Amendments when the State presented evidence of prior bad acts (Amended Petition, Doc. No. 11, at 7).  The Magistrate Judge recommended this Ground for Relief be denied because it had not been fairly presented to the state courts and because it was without merit (Report and Recommendations, Doc. No. 17, at 17) and the District Judge adopted this recommendation (Doc. No. 21).

Petitioner now seeks a certificate of appealability on this Ground for Relief, asserting it is debatable among reasonable jurists whether he presented the claim as a federal claim in the state courts and whether, assuming the Ohio Supreme Court decided the federal question implicitly, it did so in a way constituting an unreasonable application of clearly established United States Supreme Court law (Doc. No. 28 at 3-7).  In making the request, Petitioner points to no place in the state court Merit Brief where any federal precedent was cited so as to direct the Ohio Supreme Court's attention to the fact that it was faced with a federal constitutional question.  Nor does he point to any place in his papers filed in this Court where he cites any United States Supreme Court precedent which the state court unreasonably applied.  *Michelson v. United States*, 335 U.S. 469 (1948), which is

4

cited by Petitioner, held that a criminal defendant's character witnesses could be cross-examined about reports that he had been convicted of receiving stolen property.  Thus *Michelson* hardly supports Petitioner's position.

Petitioner contends that the Ohio Supreme Court's determination that the evidence was admissible for one of the purposes permitted with respect to prior bad acts was an unreasonable determination of the facts in light of the evidence.  He contends, for example, that the issue of who killed the victim or that the victim and Petitioner had a prior relationship was "not in dispute at any time in the trial."  However, he does not point to any place in the record where these facts supposedly not in dispute were stipulated to and the burden is on the State to prove every element beyond a reasonable doubt.  The fact that it now appears to the reader of the transcript that these facts were never seriously disputed does not mean the prosecutor could rely on an expectation there would be no dispute during his case in chief.

A certificate of appealability should not be granted on the First Ground.


### Third Ground for Relief


In his Third Ground for Relief, Petitioner complains of prosecutorial misconduct "in opening statement, closing argument [in the guilt phase] and argument in the penalty phase of the proceedings" (Amended Petition, Doc. No. 11, at 10).

The first alleged misconduct occurred during voir dire when the prosecutor alleged that defense attorneys will sometimes make proof beyond a reasonable doubt seem unattainable, "something perhaps in another galaxy" (Tr. Tr. 856).  Defense counsel objected and the trial judge

sustained the objection and immediately instructed the jury to disregard the comment.

The second alleged misconduct occurred during closing argument in the guilt phase where the prosecutor characterized Nields as a "mean-spirited derelict" (Tr. Tr. 1472) and a liar (Tr. Tr. 1481).  During the same argument, he alluded to the fact that, because of Nields, the victim would not be able to share Christmas with her family (Tr. Tr. 1491-1492).  Defense counsel made no objection.

The third alleged misconduct occurred in closing argument in the penalty phase when the prosecutor contrasted Nields' suffering from alcoholism, which was the focus of his mitigation argument, with what the victim suffered (Tr. Tr. 1712-1713).  Again, defense counsel made no objection.

As to the second and third sub-claims, Respondent asserted that they were procedurally defaulted because defense counsel made no objection.  The Magistrate Judge and District Judges agreed.  Petitioner now asserts (Doc. No. 28 at 10) that this was in error because the failure to object was listed as instance of ineffective assistance of counsel in Ground for Relief Twenty-Eight. However, as the Magistrate Judge concluded in rejecting that Ground for Relief on the merits, a habeas petitioner does not **prove** ineffective assistance of by typing a bare list of things counsel might have done differently and then stating "The matters listed in the preceding paragraph as well as other matters, would be raised by counsel who tried capital cases and who met the prevailing standards for defense counsel in capital cases." (Amended Petition, Doc. No. 11, at 73.)

Because the first alleged instance of misconduct was immediately cured by the trial judge and any objections to the second and third instances were plainly procedurally defaulted, no reasonable jurist would disagree with this Court's conclusions on the Third Ground for Relief.

6

**Fourth Ground for Relief**

In his Fourth Ground for Relief, Petitioner claimed he was denied effective assistance of counsel in that:

> 1. The failure to request experts by the defense team was obviously prejudicial to Nields.  These experts would have led to evidence which would have helped Nields.
>
> 2. They failed to request a mistrial after Virginia Pangallo testified that Nields had on a prior occasion broken the victim's nose.
>
> 3. Calling Dr. Emmett Cooper and Nields' sister, Rochelle Pittman, during the mitigation phase.

(Amended Petition, Doc. No. 11, at 14-16.)

The Court denied this Ground for Relief on the merits, finding that (1) what other unidentified experts might have testified to was speculative, (2) the decision not to ask for a mistrial was a deliberate strategic decision as shown by the trial record, and (3) Cooper was a well-credentialed expert on alcoholism and Rochelle Pittman was absolutely necessary to show the impact of alcohol on her brother's life.  Nothing stated in the instant Motion persuades the Court that these conclusions would be debatable among reasonable jurists.

**Ninth Ground for Relief**

In his Ninth Ground for Relief, Petitioner claimed that the admission of gruesome and

otherwise prejudicial photographs, cumulative with each other and with other evidence, deprived him of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights (Amended Petition, Doc. No. 11, at 26).

This Court upheld the Ohio Supreme Court's conclusion that Petitioner had procedurally defaulted as to any objection to crime scene and autopsy photographs marked State's Exhibits 3-A, 3-B, 3-C, 4-A, 4-E, 4-G, and 28, concluding: "This procedural default finding satisfies the requirements of *Maupin v. Smith*, 785 F. 2d 135, 138 (6th Cir. 1986), and Petitioner has not suggested any cause for failure to make a contemporaneous objection.  Any constitutional claim as to these five photographs is thus defaulted."

Petitioner now seeks a certificate of appealability because he says he made an arguable showing that the procedural default was excused by ineffective assistance of counsel (Request, Doc. No. 28, at 13).  However, the argument for ineffective assistance of counsel as cause was the same for this Ground for Relief as it was for Ground Three – completely conclusory.

**Twenty-seventh Ground for Relief**

In his Twenty-seventh Ground for Relief, Petitioner complained of a number of instances of alleged prosecutorial misconduct (Amended Petition, Doc. No. 11, at 63).

In his Request, Petitioner argues that the Ohio Supreme Court and this Court failed to consider the cumulative effect of the combined instances of prosecutorial misconduct.  To the contrary, the Report and Recommendations expressly relied upon the legal standard now cited by Petitioner and concluded "Petitioner has not shown how any such claimed misconduct either was

8

indeed misconduct or how, **cumulatively**, such instances of misconduct as the Ohio Supreme Court found deprived Petitioner of a fair trial. Put another way, Petitioner has not demonstrated that the Ohio Supreme Court's decision on this claim was an objectively unreasonable application of the relevant United States Supreme Court precedent." (Report and Recommendations, Doc. No. 17, at 54; emphasis added.) Petitioner's Request, since it merely asserts the Court did not apply the correct standard and evaluate the misconduct cumulatively, does not show why reasonable jurists would disagree with this Court's conclusion.

## Twenty-eighth Ground for Relief

In his Twenty-eighth Ground for Relief, Petitioner claimed that he was deprived of his right to effective assistance of counsel during the mitigation phase of his trial (Amended Petition, Doc. No. 11, at 67). He asserted his trial counsel did not adequately investigate his mitigation case, did not interview his sister until the last week of trial, did not tell her they had a diary of her brother's in which he threatened to kill her, did not know whether Dr. Cooper had prepared a written report, and did not hire an independent psychologist.

The Ohio Supreme Court analyzed this claim extensively under *Strickland v. Washington*, 466 U.S. 668 (1984), and Respondent relied on that analysis. This Court concluded that the Ohio Supreme Court's decision was not an unreasonable application of *Strickland*. (Report and Recommendations, Doc. No. 17, at 58.)

In seeking a certificate of appealability, Petitioner now refers to all of the affidavits submitted in post-conviction and says they show trial counsel failed to prepare. However, in his

Traverse, all that Petitioner said on this subject was

> The affidavits submitted in support of the state postconviction claims of penalty phase ineffectiveness illustrate that there was a wealth of available mitigating evidence that defense counsel failed to investigate, prepare and present. Defense counsel also failed to investigate and present expert and lay testimony to counter evidence offered by the prosecution.  The jury that sentenced Nields to death knew little about him, his life, or his background.  Had the mitigation evidence been presented to the jury, there is a reasonable probability the jury would not have sentenced Nields to death.

(Traverse, Doc. No. 15, at 81.)  Petitioner never sought an evidentiary hearing to present any of this post-conviction evidence, all of which is in the record in affidavit (i.e., uncross-examined hearsay) form.  Nor did Petitioner seek to present any evidence from trial counsel about whether they knew of any of this potential evidence and decided not to present it or if in fact they never found out about it or could have found out about it.  Indeed, Petitioner presents in his Request for Certificate of Appealability detail about the post-conviction record which was never presented before this Court reached a decision.  Given the manner in which this argument was presented to this Court prior to judgment, reasonable jurists would not disagree with the Court's conclusion.

### Twenty-ninth Ground for Relief

In his Twenty-ninth Ground for Relief, Petitioner asserted that he was denied effective assistance of trial counsel in the guilt phase of his capital trial (Amended Petition, Doc. No. 11, at 73).  The Amended Petition listed thirty different failures of trial counsel to perform in accordance with required professional standards *Id*. at 74-79.  As with Ground for Relief Twenty-eight, Respondent relied entirely on the Ohio Supreme Court decision. Petitioner's response to the Ohio

10

Supreme Court's decision and to Respondent's reliance on it is, as with the Twenty-eighth Ground

for Relief, mere *ipse dixit*:

> The matters listed above as well as others would be raised by counsel
> who tried capital cases and who met the prevailing standards for
> defense counsel in capital cases. These and other prejudicial errors
> and omissions denied Petitioner his right to the effective assistance
> of counsel, and seriously undermined the reliability of the guilt phase
> verdicts.

(Traverse, Doc. No. 15, at 89.) In the Report and Recommendations, the Magistrate Judge noted

"There is no reference to case law or other sources of standards which would suggest that the Ohio

Supreme Court was wrong in its decision on this claim. Petitioner has not shown that that decision

was an objectively unreasonable application of *Strickland v. Washington.*" (Doc. No. 17 at 60.)

In his Request for Certificate of Appealability, Petitioner now recites seven asserted

examples of ineffective assistance and concludes, without citation to any controlling law, "Counsel

who tried capital cases and who met the prevailing standards for defense counsel in capital cases

would have objected." (Request, Doc. No. 28, at 18.) The only case cited is *Strickland*. Counsel's

position seems to be that anytime trial counsel doesn't do something which habeas counsel later

thinks should have been done, it is arguable that the state courts unreasonably applied *Strickland*

because they did not agree with habeas counsel's evaluation of trial counsel's conduct. But the

*Strickland* Court itself commands:

> Judicial scrutiny of counsel's performance must be highly deferential.
> . . . A fair assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and
> to evaluate the conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct falls within
> a wide range of reasonable professional assistance; that is, the

> defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689. Petitioner has not shown that this Court's conclusion on the Twenty-ninth Ground for Relief is debatable among reasonable jurists.

### Thirtieth Ground for Relief

In his Thirtieth Ground for Relief, Petitioner asserted that the cumulation of errors in his case deprived him of his violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights (Amended Petition, Doc. No. 11, at 79). This Court denied the Thirtieth Ground for Relief because cumulative error is not a basis for granting habeas corpus relief citing *Lorraine v. Coyle*, 291 F. 3d 416, 447 (6th Cir. 2003).

In his Request for Certificate of Appealability, Petitioner argues that the appropriateness of a capital sentence is the fundamental issue in any capital case and "it is debatable that Richard Nields was appropriately sentenced to death in this case."

However, the question of whether death is the appropriate sentence in any particular case is not a federal constitutional question and federal courts do not sit in habeas corpus to make an independent judgment on that appropriateness. None of the case authority cited by Petitioner suggests that this Court or the Sixth Circuit Court of Appeals has authority to make a *de novo* decision on that question.

### Conclusion

The findings and conclusions of this Court comprising its final judgment are not debatable

12

among jurists of reason and a certificate of appealability should therefore be denied.

December 14, 2004.

s/ **Michael R. Merz**

Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).